IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SONYA ESEDEBE, *et al.*,  )
 )
        Plaintiffs,  )
 )
v.  )   Civil Action No. 3:20-cv-8–HEH
 )
CIRCLE 2, INC., *et al.*,  )
 )
        Defendants.  )

**MEMORANDUM OPINION**
(Resolving Motions)

Plaintiffs[1] filed suit in this Court on January 7, 2020, against Defendants,[2] for failing to provide adequate wages as required by the Fair Labor Standards Act ("FLSA"). On January 30, 2020, Defendants filed a Motion to Dismiss, both for failing to state a claim and for lack of jurisdiction, and a Motion to Strike Plaintiffs' Complaint as to the FLSA Collective Action. After filing an Amended Complaint on February 27, 2020, (ECF No. 17), Plaintiffs filed a Motion to Certify Class Conditional Collective Action

---

[1] Plaintiffs include the following individuals: Sonya Esedebe, Tarajah Ford, Sandra Robinson, Antoinette Mapp, Chelsey Slade, Ivy Stewart, Sophia Taylor, Whitney Taylor, Toni Klee, Aidan George, Latrease Lovelace, Jacqueline Campbell, Tein Phung, Molly Mason, Sedamony Ngin, Cierra Artis, Victoria Messick, Jessica Guice, Ellington Braun, Kiara Iverakhan, Gabrielle Fortin, Maria Londono, Avia Stevens, and Irena Schunn. Two Plaintiffs, Destiny Walls and Ashley Hoosock, have dismissed their claims.

[2] Defendants include the following persons and entities: Circle 2, Inc. d/b/a Daddy Rabbits, LVP, Inc. d/b/a Candy Bar, BTF3 LLC d/b/a Paper Moon, Imaginary Images, Inc. d/b/a Paper Moon; M.G.B., Inc. d/b/a Pure Pleasure Club, Arkesia, Inc. d/b/a Club Rouge, Piccadilly Grill & Buffet, Inc. d/b/a Baby Dolls Club, Pyliaris Corporation d/b/a Strickly Business Transportation, and William Pyliaris.

Certification and Judicial Notice on March 4, 2020 (ECF No. 18). Defendants have renewed their Motion to Dismiss on March 12, 2020 (ECF No. 25) and also filed an Amended Motion to Dismiss on August 12, 2020 (ECF No. 49).[3] The parties have filed memoranda in support of their positions on the Motions, and the Court heard oral argument on October 23, 2020. The Motions are now ripe for review. For the foregoing reasons, the Court will deny the Motions to Dismiss and will grant the Motion to Certify Conditional Class Action.[4]

## I. BACKGROUND

Plaintiffs worked for Defendants in two primary roles: as exotic dancers ("Entertainer Plaintiffs") and managers ("Manager Plaintiffs"). (Am. Compl. ¶¶ 70–72.) Plaintiffs allege that, while working for Defendants, they were not properly compensated under the FLSA. (*Id.* ¶ 1.) Defendants Pyliaris and Pyliaris Corporation purportedly own and manage the other Defendants. (*Id.* ¶¶ 27, 82–84.) Entertainer Plaintiffs worked in the clubs and danced, performed, and interacted with Defendants' customers. (*Id.* ¶ 31.) Defendants supposedly exerted ample control over much of Entertainer Plaintiffs' work, such as what music they danced to, how they dressed, what shoes they wore, how they interacted with customers, and the amount they charged for dances. (*Id.* ¶ 32.) Moreover, Entertainer Plaintiffs were allegedly never paid by Defendants and were only

---

[3] After Defendants filed the Amended Motion to Dismiss, Plaintiffs moved to voluntarily dismiss Count II of the Amended Complaint on August 26, 2020 (ECF No. 51). Accordingly, the Court will grant Plaintiffs' voluntary dismissal and will dismiss Count II with prejudice.

[4] Defendants have additionally filed four Motions to Compel Arbitration (ECF Nos. 62, 77, 79, 81). These Motions were not before the Court at the October 23, 2020 hearing and, thus, the Court will address the Motions separately.

compensated based upon the tips earned and sales made, with Defendants deducting various fees from Entertainer Plaintiffs' earnings. (*Id.* ¶¶ 40–41.)

Manager Plaintiffs, by contrast, were paid hourly for performing numerous duties including hiring, scheduling, and supervising the entertainers, reviewing inventory, bookkeeping, preparing reports, and other duties as assigned by Michael Dickinson, the CEO of Pyliaris Corporation and Pyliaris. (*Id.* ¶ 53.) Manager Plaintiffs frequently worked hours in excess of forty hours per week and were purportedly not compensated for the overtime worked. (*Id.* ¶ 56.) Defendants are alleged to have often manipulated the hours reported by managers to ensure that they were not compensated fairly for overtime. (*Id.* ¶¶ 61–63.) Plaintiffs claim that Defendants willfully violated the FLSA by knowingly failing to compensate Plaintiffs for the hours worked. (*Id.* ¶¶ 51, 67.) Accordingly, Plaintiffs seek money damages for the unpaid wages as well as other relief permitted under the FLSA. (*Id.* at 16.) Plaintiffs also request class certification with two subclasses, one for Entertainer Plaintiffs and one for Manager Plaintiffs. (*Id.* ¶ 70.)

In the Motions to Dismiss, Defendants aver that Plaintiffs do not have standing to sue Pyliaris Corporation or Pyliaris as they were employed by the other Defendant entities and, thus, Pyliaris or Pyliaris Corporation could not have caused Plaintiffs' injuries. (Mem. Supp. Mot. Dismiss at 6, ECF No. 26.) Defendants also assert that Plaintiffs have not adequately pled with sufficient specificity a claim for overtime wages. (*Id.* at 10–11.) However, Plaintiffs contend that, as Defendants are joint employers, Plaintiffs have standing against Pyliaris Corporation and Pyliaris. (Opp'n Mot. Dismiss

at 7–8, ECF No. 29.) Plaintiffs maintain that, under the lenient pleading standard, they have presented adequate facts to support the overtime wage claims. (*Id.* at 12–13.)

In Plaintiffs' Memorandum in Support of the Motion to Certify Conditional Class Action, they argue that they are sufficiently similarly situated to be conditionally certified as a class because all Plaintiffs worked similar positions for Defendants with similar terms and conditions of employment. (Mem. Supp. Mot. Certify Class at 6–10, ECF No. 19.) Defendants maintain, however, that because the Court will have to make individualized damage calculations based upon each Plaintiff's hours worked, there are not sufficient factual and legal similarities to certify a class. (Opp'n. Mot. Certify Class at 7–8, ECF No. 28.) Moreover, Defendants argue that the scope of proposed class is too broad under the FLSA's statute of limitations of two to three years. (*Id.* at 12.)

## II. DISCUSSION

### A. Motions to Dismiss – Lack of Standing

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the Court's jurisdiction over the subject matter of the case. Plaintiffs bear the burden to establish such jurisdiction throughout the proceeding. *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A critical element of federal subject matter jurisdiction is standing. To establish standing, a plaintiff must demonstrate three irreducible constitutional minima: an injury-in-fact that is concrete and particularized, and actual or imminent, not conjectural or

hypothetical; an injury that is fairly traceable to the challenged action of the defendant; and that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The second prong, causation, requires that the plaintiff's injury be caused by the defendant and is not "the result of the independent action of some third party not before the court." *Id.* at 560 (alterations omitted) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 25 41–42 (1976)). The third prong, redressability, ensures that courts only have jurisdiction to intervene when a court can address and provide a remedy for a particular injury. *See Crutchfield v. U.S. Army Corps. of Eng'rs*, 230 F. Supp. 2d 687, 694–95 (E.D. Va. 2002) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000)). A plaintiff bears the burden of establishing that she has standing for each type of relief sought. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Because Plaintiffs did not work directly for Pyliaris Corporation, Defendants contend that Plaintiffs lack standing to pursue their claims. Plaintiffs disagree. First, Plaintiffs point to the fact that they have presented a clear injury; they were allegedly paid inadequate wages and were uncompensated for overtime worked. If proven, the FLSA provides an adequate remedy. Whether all of Defendants caused Plaintiffs' injuries is an issue to be decided.

Defendants argue that Plaintiffs improperly seek standing under the "juridical link doctrine." Under this doctrine, "the representative of a properly certified class may sue defendants against whom the representative has no direct claims. Those defendants, however, must be linked by way of some 'conspiracy or converted scheme' with a

5

defendant against whom the representative *does* have a direct claim." *Faircloth v. Fin. Asset Sec. Corp. Mego Mortg. Homeowner Loan Tr.*, 87 F. App'x 314, 318 (4th Cir. 2004). In *Faircloth*, the United States Court of Appeals for the Fourth Circuit explicitly stated that "we have yet to recognize this [doctrine] in this circuit." *Id.* There is no precedent from within the Fourth Circuit that adopts the juridical link doctrine. *See, e.g., Popoola v. Md-Individual Prac. Ass'n Inc.*, 230 F.RD. 424, 431 (D. Md. 2005) (stating that the court was "skeptical" of the doctrine); *see also Zacyer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 406 (D. Md. 2012). Accordingly, Plaintiffs cannot seek standing via the "juridical link" doctrine in this circuit. However, Plaintiffs maintain that they do not seek standing via the juridical link doctrine. Rather, Plaintiffs argue that, as Defendants are joint employers under the FLSA and, because Pyliaris Corporation and William Pyliaris exert control over the other Defendants, they are responsible for Plaintiffs' injuries.

This Court is governed by the Fourth Circuit's decision in *Hall v. DIRECTV*, 846 F.3d 757 (4th Cir. 2017). There, the court explained that there are two parts to the joint employer analysis. The first prong requires the court to "determine whether the defendant and one or more additional entities shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work." *Id.* at 767. The second prong "asks whether a worker was an employee or independent contractor for the purposes of the FLSA." *Id.* A court must look to six non-exclusive factors when determining if two or more defendants jointly controlled the terms and conditions of a plaintiff's employment. *Id.* at 769. These factors include: (1) whether the putative joint employers jointly control or supervise the employees; (2) whether the

6

putative joint employers could jointly hire or fire the employee; (3) the duration and permanency of the relationship between the employers; (4) whether one putative employer controls the other putative employers; (5) whether employees work at premises owned or controlled by one or more of the putative joint employers; (6) whether the putative joint employers jointly determine or share responsibility over functions such as insurance, paying payroll taxes, providing facilities for work, et cetera. *Id.*

Under the second prong, a court must consider "the economic realities of the relationship between the defendants and the plaintiffs," particularly whether the "[p]laintiffs were economically dependent on [the] [d]efendants, or, instead, were in business for themselves." *Id.* at 774 (internal quotation marks and citations omitted). To make this determination, a court utilizes the following factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006).

Plaintiffs allege that Pyliaris, as the owner of Pyliaris Corporation, had "ultimate authority" over the various businesses and clubs. (Am. Compl. ¶ 27.) Moreover, the Amended Complaint states that Pyliaris Corporation, and Pyliaris as "an officer, director, shareholder, and/or president or vice president of Pyliaris Corp[oration] and the [c]lubs," controlled Plaintiffs' terms and conditions of employment. (*Id.* ¶ 82; *see also* ¶¶ 27–28, 83–84.) Plaintiffs also contend that Pyliaris has exercised the requisite control,

7

specifically that he "had the power to hire and fire employees . . . supervised and controlled employee work schedules, or conditions of employment[,] [and] . . . determined the rate and method of payment for . . . employees." (*Id.* ¶ 82.) Additionally, most Plaintiffs worked for multiple Defendants over the course of several years. (*Id.* ¶¶ 5-18.) Plaintiffs were integral to the operation of Defendants' clubs; Entertainer Plaintiffs performed and interacted with Defendants' customers while Manager Plaintiffs completed numerous tasks such as managing the entertainers and inventory critical to the operation of Defendants' establishments. As Plaintiffs' work touched many critical aspects of Defendants' business, they were a fundamental part of Defendants' operations. (*Id.* ¶¶ 32, 53.) Taking the facts in the light most favorable to Plaintiffs, they plausibly claim that Defendants jointly controlled the terms and conditions of Plaintiffs' employment.

Plaintiffs have also satisfied the second prong of the joint employment analysis. As alleged, Defendants exerted significant control over how Entertainer Plaintiffs worked. (*Id.* ¶ 32.) This included everything from the music they danced to, the schedule they worked, how they interacted with customers, to how they dressed and how much they charged for a dance. (*Id.*) Entertainer Plaintiffs are integral to Defendants' business operations because Plaintiffs were the center piece of their customers' experiences. (*See id.* ¶ 31.) Manager Plaintiffs performed numerous crucial functions, such as "hiring, scheduling and supervising Entertainers, reviewing inventory, [and] performing bookkeeping duties." (*Id.* ¶ 53.) These facts tend to show that the "economic realities" of the relationship meant that Plaintiffs were treated as essential employees

8

rather than independent contractors. At this preliminary stage, the Court finds that Plaintiffs have sufficiently alleged that Defendants are a joint employer and plausibly liable for Plaintiffs' injuries. Accordingly, Plaintiffs have standing to bring this action.

### B. Motions to Dismiss – Failure to State a Claim

"In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A motion under Federal Rule of Civil Procedure 12(b)(6) "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*, 948 F.3d at 226 (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

To demonstrate a claim under the FLSA, the plaintiff must show "(1) that she was an employee of the Defendant (2) that she worked overtime hours and the 'amount and extent' of such work, (3) that Defendant failed to pay her the requisite overtime premium under the FLSA for those hours, and (4) that Defendant knew of Plaintiff's uncompensated time." *Macias v. Monterrey Concrete LLC*, No. 3:19cv830, 2020 WL 5638710, *4 (E.D. Va. Sept. 21, 2020) (quoting *Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 645 (E.D. Va. 2019). Notably, the Fourth Circuit has joined several of its sister circuits to adopt a lenient pleading standard for FLSA claims. *Hall*, 846 F.3d at 776. The court explained that, "to make a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek." *Id.* at 777. This standard "does not require plaintiffs to identify a particular week in which they work uncompensated overtime hours." *Id.*

Defendants claim that not only are they not a joint employer, but also that Plaintiffs have failed to allege their claims with sufficient specificity because they need to demonstrate additional detail as to the specific time and hours that were uncompensated. Plaintiffs maintain that Defendants are in fact joint employers as Pyliaris Corporation and William Pyliaris control the clubs as well as the employees. Moreover, Plaintiffs aver that they have met the lenient pleading standard for FLSA claims adopted in this circuit.

As discussed above, at this preliminary stage, the Court finds that Plaintiffs have adequately presented sufficient facts to show that Defendants are joint employers. Entertainer Plaintiffs claim that they were never compensated by Defendants, regardless

10

of whether they worked more than forty hours per week. (Am. Compl. ¶¶ 35–40.) Manager Plaintiffs allege that their time sheets were frequently altered to prevent them from being compensated in excess of forty hours. (*Id.* ¶¶61–62.). At this stage, Plaintiffs have made an adequate *prima facie* showing that Defendants have failed to pay Plaintiffs adequate wages for the time worked and that Defendants knew that they were improperly compensating Plaintiffs. Therefore, the Court will deny the Motions to Dismiss.

**B. Motion to Certify Class**

Section 216(b) of the FLSA provides the following guidance for class actions:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added). Courts uniformly describe § 216(b) actions involving the joinder of similarly situated employees as collective actions and certification of these actions proceeds in two phases: (1) conditional class certification, and (2) class decertification. *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547–48 (E.D. Va. 2009).

At the conditional certification phase, courts apply a lenient standard in determining whether the proposed collective action is "similarly situated" within the meaning of the FLSA. *Purdham*, 629 F. Supp. 2d at 548. "The primary focus . . . is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a

11

lesser extent, the factual issues to be determined.'" *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (quoting *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D. Va. 2002)). Generally, plaintiffs are required to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Choimbol*, 475 F. Supp. 2d at 563. The conditional certification decision often comes early in a proceeding, "typically before any significant discovery," as the statute of limitations for claims of unnamed class members continue to run until they file a consent to join with the court. *Houston*, 591 F. Supp. 2d at 831. The second phase of certification only occurs if a defendant files a motion for decertification, which typically occurs after discovery is completed or nearly completed. *Id.* at 832. In deciding whether to decertify, courts apply a "heightened, fact-specific" similarly situated analysis. *Id.*

At this stage, Plaintiffs seek conditional class certification with two subclasses, "Entertainers" and "Managers." Plaintiffs assert that they are sufficiently similarly situated to the putative class to be conditionally certified as a class. Defendants argue that Plaintiffs are not similarly situated as they are not representative of the putative classes. At this early stage, the Court finds that Plaintiffs are sufficiently similarly situated as to each of the subclasses. Entertainer and Managers Plaintiffs performed similar tasks at each of Defendants' clubs and establishments. This will lead to similar legal and factual issues regarding the interpretation of their employment contracts. Although the Court will need to perform individualized calculations for each Plaintiff's specific damages and lost wages, there are sufficiently similar legal and factual matters to

make a class action a more efficient and expeditious way to proceed. Thus, the Court will conditionally certify the class with two subclasses, one for entertainers and one for managers. Plaintiffs' counsel will be appointed as class counsel.

As part of the certification process, Plaintiffs seek several additional measures. First, Plaintiffs seek approval of their Proposed Notice of Lawsuit, Opt-In Form, and Publication Notice, attached as Exhibits 1 and 2 to their Memorandum in Support of their Motion to Compel. Second, Plaintiffs request authorization to send the Notice of Lawsuit and Opt-In Form via first class mail and email to all potential plaintiffs. Third, Plaintiffs ask this Court to order Defendants to post the Publication Notice in a conspicuous place in each of the clubs. Finally, Plaintiffs request that Defendants produce a list of all entertainers and managers who worked for Defendants since December 28, 2015 through the present, including their names, job titles, mailing addresses, email addresses, telephone numbers, and the last four digits of their Social Security numbers.

Defendants object to Plaintiffs' Proposed Publication Notice, Proposed Notice of Lawsuit, and request for contact information for potential opt-in plaintiffs as overly broad. (Opp'n to Mot. Certify Class at 11–12.) As Plaintiffs seek information going back to December 28, 2015, Defendants contend that this five year "look-back" period to seek information regarding potential class members is longer than the statute of limitations for FLSA claims. FLSA claims have a statute of limitations of two years for ordinary violations and three years for willful violations. 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011). Thus, Plaintiffs' proposed "look-back" period is inconsistent with the statute of limitations. Accordingly,

13

Plaintiffs may seek information relating to potential class members going back no more than three years. With this modification, the Court approves the proposed notice attached as Exhibits 1 and 2 to the Memorandum in Support of the Motion to Certify Class. The Court further approves Plaintiffs' request to send the Notice of Lawsuit and Opt-In Form via first class mail and email. The Court will order Defendants to produce a list of all potential opt-in plaintiffs and their contact information for the past three years and to publish notice at its clubs.

## IV. CONCLUSION

In sum, the Court finds Plaintiffs have standing to proceed with their FLSA claims against Defendants. Plaintiffs have also adequately present allegations stating a cause of action under the FLSA. Moreover, there are sufficient factual similarities between Plaintiffs for the Court to conditionally certify the class with two subclasses. Accordingly, the Motions to Dismiss (ECF Nos. 25, 49) will be denied and the Motion to Certify Class (ECF No. 18) will be granted. The Court will grant Plaintiffs' Motion to Dismiss Count II of the Amended Complaint (ECF No. 51) with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: January 22, 2021
Richmond, Virginia